1  TIMOTHY J. YOO (State Bar No. 155531)
   tjy@lnbyb.com
2  GARY E. KLAUSNER (State Bar No. 69077)
   gek@lnbyb.com
3  KURT RAMLO (State Bar No. 166856)
   kr@lnbyb.com
4  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
5  Los Angeles, CA  90067
   Telephone: (310) 229-1234
6  Facsimile: (310) 229-1244

7  Attorneys for Heide Kurtz, Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **LOS ANGELES DIVISION**

11  In re                              Case No. 2:18-bk-14756-BR
    ,
12  G.H. COOPER PROPERTIES, INC.,      Chapter 7

13             Debtor.                 **Omnibus Opposition to Motions for
                                       Relief from the Automatic Stay (Action in
14                                     Non Bankruptcy Forum) (ECF Nos. 39,
                                       45, 47, 49); Declaration of Heide Kurtz in
15                                     Support Thereof**

16                                     Hearing
                                       Date:   August 14,2018
17                                     Time:   10:00 a.m.
                                       Place:  Courtroom 1668
18                                             255 E. Temple Street
                                               Los Angeles, CA 90012
19

20

21

22

23

24

25

26

27

28

1    Heide Kurtz, the Chapter 7 Trustee (the "Trustee") for the estate of G.H. Cooper

2  Properties, Inc. (the "Debtor" or "GHCP"), files this omnibus opposition with respect to each

3  *Motion for Relief from the Automatic Stay under 11 U.S.C. § 362 (Action in Nonbankruptcy*

4  *Forum)* (the "Motions") filed by the following Moving Parties:  David Pasternak (ECF No. 39,

5  filed July 6, 2018) and by Sherrel Investment Group, LLC (ECF No. 45, filed July 9, 2018, the

6  "Sherrel LLC"), Straight Creek Investment Group, LLC (ECF No. 47, filed July 9, 2018, the

7  "Straight LLC"), and Village West Investment Group, LLC (ECF No. 49, filed July 9, 2018, the

8  "Village LLC") (collectively, the "LLCs").

9                                    **I.   INTRODUCTION**

10    The Debtor formerly managed real estate investments in the form of the LLCs.  The real

11  properties owned by the LLCs have been sold but the members of the LLCs, which members

12  include the Debtor, dispute how the proceeds were and should be distributed under the

13  "waterfall" provisions of the governing operating agreements.  The members also dispute

14  whether the Debtor or other LLC members are entitled to indemnification from the LLCs for the

15  legal expenses incurred in arbitrating and litigating the waterfall and indemnification disputes.

16    These various disputes are being litigated in two Los Angeles Superior Court actions

17  ("LASC 1" and "LASC 2," and collectively. the "State Court Actions") which have been

18  pending for more than two years.  About a month before the petition date, the Debtor filed a

19  class action cross-complaint against the LLCs, its other former manager (David Pasternak), and

20  the LASC 1 Plaintiffs who are certain members of the LLCs (the "Singer Group" or

21  "Plaintiffs").  About a week before the petition date, the Plaintiffs filed a motion for summary

22  adjudication (the "MSA") in LASC 1 of the waterfall and indemnification issues.

23    Pasternak and the LLCs seek stay relief to allow the LASC 1 state court litigation to

24  proceed to judgment (on the waterfall and indemnification issues), to allow the sale proceeds to

25  be distributed in accordance with any state court judgment, and to seek attorneys' fees when

26  attacking the Debtor's cross-complaint with anti-SLAPP motions.  The MSA seeks a judgment

27  on the issue of how the "waterfall" and indemnification provisions should be interpreted, and,

28  therefore will materially impact the interests of the estate.  The gravamen of the action is

1   whether the Debtor's version or the Plaintiffs' view of these provisions is correct.  Resolution of

2   these issues is a zero sum game.  If the Plaintiffs' version is correct, the estate receives

3   significantly less from the sale proceeds and the other LLC members receive more.  If the

4   Debtor's version is correct, the estate receives significantly more and the other LLC members

5   receive less.

6          Although the MSA has a hearing date of August 6, 2018, with an opposition deadline of

7   July 24, 2018, in light of the fact that the trustee was appointed on or about April 26, 2018, as a

8   practical matter, it would have been impossible for the Trustee to be in a position to respond in a

9   timely and meaningful manner to a case-determinative motion.  In addition, the Trustee has

10  been engaged in settlement discussion with the Plaintiffs and the Moving Parties and if the MSA

11  were to go forward and a judgment entered in favor of the Plaintiffs, the estate would be at a

12  severe disadvantage in negotiating a settlement.  The Moving Parties fail to acknowledge these

13  issues and have failed to make a prima facie showing of cause for stay relief.  Alternatively, the

14  Trustee has shown that stay relief is unwarranted and would adversely and materially affect the

15  interest of this estate and its creditors.  Thus, the Motions should be denied.

16                                    **II. <u>BACKGROUND</u>**

17         The Debtor was the Manager of the LLCs since their formation in 2010-2012.

18  (Pasternak Mot. RJN Ex. A ¶¶ 7-9, 11, at 6.)  In 2015, the Debtor arranged for the Straight LLC

19  and Village LLC to sell their properties, resulting in net proceeds of approximately $18 million.

20  (Pasternak Decl. ¶ 6, at 18-19.)  Also in 2015, the Debtor and the Singer Group members of the

21  LLCs began to dispute how the sale proceeds should be distributed under the waterfall

22  provisions of the operating agreements.  (*Id.* ¶ 7, at 19; RJN Ex. A at 7, ¶ 13.)  The non-debtor

23  members of the LLCs voted to replace the Debtor with Pasternak as Manager.  (Pasternak Decl.

24  ¶ 10, at 19.)  Pasternak then arranged for the Sherrel LLC to sell its property, resulting in

25  aggregate net proceeds from all three sales of approximately $18 million.  (Pasternak Decl. ¶ 6,

26  at 18.)

27         The LLCs filed the LASC 1 action in February 19, 2016 against the Debtor.  (RJN

28  Ex. A.)  The Plaintiffs obtained a preliminary injunction, restraining the Debtor from disposing

                                              2

1   of any of the LLCs' funds and from interfering with Pasternak.  (Pasternak Decl. ¶ 13, at 19-20.)

2   Although not attached to the Motions, the Third Amended Complaint is apparently the operative

3   complaint, filed on January 2, 2018.  (RJN Ex. B, at 20; Trustee RJN Ex. A.)  That complaint

4   includes two defendants not named in the original complaint; Sheryl Cooper, the Debtor's

5   President, and Todd Grayson, purportedly the former CEO and a director and shareholder of the

6   Debtor.  (Trustee RJN Ex. E ¶ 11, at 4-5).  That complaint also includes the LLCs as nominal

7   defendants.  The Third Amended Complaint alleges counts for (1) breach of contract against the

8   Debtor, Cooper, and Grayson (the "GHCP Defendants") relating primarily to the waterfall and

9   indemnity issues for damages in excess of $1.5 million, (2) money had and received against the

10  GHCP Defendants for use of $650,000 in legal expenses arising from the Debtor's initiation of

11  arbitration on the waterfall dispute, (3) an accounting against the GHCP Defendants,

12  (4) declaratory relief against the GHCP Defendants and Pasternak as the waterfall distribution,

13  (5) declaratory relief against all defendants as to the indemnity rights of the GHCP Defendants

14  for the arbitration legal expenses, (6) declaratory relief against the GHCP Defendants and

15  Pasternak as the Plaintiffs' indemnity rights for arbitration legal expenses, and (7) declaratory

16  relief against all defendants as to the indemnity rights of the GHCP Defendants for the LASC 1

17  legal expenses.  (Trustee RJN Ex. E.)

18        Two months later, in March 2018, the Debtor filed a First Amended Class Action Cross-

19  complaint against the Singer Group plaintiffs, the LLCs, and Pasternak.  It alleges counts for (1)

20  breach of contract against the Singer Group for interfering with the sale of the Straight LLC and

21  Village LLC properties to the damage of the other LLC members, (2) breach of contract against

22  the Singer Group for interfering with the sale of the property of an LLC involved in the LASC 2

23  action (the Arvada LLC), (3) breach of contract by the Debtor and the LCCs against Pasternak

24  for causing the LLCs to litigate the LASC 1 action against the Debtor, (4) declaratory relief

25  against Pasternak on the waterfall issue, (5) declaratory relief against Pasternak, the Singer

26  Group, and the LLCs on the Debtor's and Plaintiffs' indemnity rights, (6) declaratory relief

27  against Pasternak and the LLCs on the Debtor's indemnity rights for the arbitration,

28  (7) declaratory relief against Pasternak and the LLCs on the Debtor's advancement rights for the

3

1 | arbitration and the LASC actions, (8), (9), and (10), respectively, breach of contract against the

2 | LLCs for failure to pay the Debtor its sale commission, expense reimbursement, and indemnity

3 | and advancement costs relating to the arbitration.  (Pasternak Decl. ¶ 15 Ex. 1.)

4 |     On April 19, 2018, the Singer Group filed a motion for summary adjudication of issues

5 | in its third amended complaint, seeking the adjudication of the following ten issues against the

6 | Debtor and others:

**CAUSE OF ACTION # 1 (BREACH OF CONTRACT)**

**ISSUE NO. 1**: <u>GHCP breached</u> the Operating Agreements by failing to distribute the "net proceeds from a sale" in accordance with its Exhibit C, resulting in the following damages to the Singers as Members of: (a) Sherrel in the amount of $1,872,552.37; (b) Straight Creek in the amount of $2,833,667.19; and (c) Village West in the amount of $1,699,445.64.

**ISSUE NO. 2**: <u>GHCP breached</u> the Operating Agreements by filing Arbitration against the Singers, entitling them to indemnity of their attorneys' fees and costs incurred in the defense therewith ($603,629, plus interest at the legal rate), pursuant to § 11.1 of same, from May 27,2016 to present.

**ISSUE NO. 3**: <u>GHCP breached</u> the Operating Agreements by using $1,260,811.14 of Member funds to pay for its legal fees for the Arbitration, causing the Singers to suffer the following damages flowing from the deprivation of these amounts for distribution pursuant to Exhibit C: (a) $59,825.49 (Sherrel); (b) $133,162.67 (Straight Creek); and (c) $93,615.23 (Village West), plus interest at the legal rate on all of these sums from May 27, 2016 to present.

**CAUSE OF ACTION #4 (DECLARATORY RELIEF - WATERFALL)**

**ISSUE NO. 4:** The Singers' interpretation of Exhibit C of the Operating Agreements ("<u>Waterfall</u>") is correct [<u>and not GHCP's interpretation</u>].[**1**]

**ISSUE NO. 5:** The Singers are entitled to a declaration that the "net proceeds from a sale" of the subject properties are to be distributed according to the Singers' interpretation [<u>and not GHCP's interpretation</u>] of Exhibit C of the Operating Agreements, and a distribution to them, in the following amounts: (a) Sherrel:  $1,872,552.37; (b) Straight Creek: $2,833,667.19; and (c) Village West: $1,699,445.64.

---

**1**  The undersigned has recently received a pleading from Plaintiffs indicating that the MSA is going forward on August 9, 2018 only with respect to Issues 4 and 8.  The undersigned has no state court order or other document that confirms that this is the state court's contemplated scope of its hearing of and ruling on the MSA.

4

**CAUSE OF ACTION #5 (DECLARATORY RELIEF - GHCP
IMPROPER TAKING OF ADVANCEMENT/INDEMNITY FOR
PRIOR ARBITRATION)**

**ISSUE NO. 6**: <u>GHCP was not entitled</u> to advancement, indemnity
or reimbursement for the prior Arbitration.

**ISSUE NO. 7**: <u>GHCP was not entitled</u> to advancement, indemnity
or reimbursement for the prior Arbitration and a resulting Declaration that
GHCP must now return $630,405.57, including: (a) $210,135.19 to the
Members of Sherrel, with $59,825.49 of that sum going to the Singers;
(b) $210,135.19 to the Members of Straight Creek, with $133,162.67 of
that sum going to the Singers; and (c) $210,135.19 to the Members of
Village West, with $93,615.23 of that sum going to the Singers, plus legal
interest from May 27, 2016 to the present on all sums owed.

**CAUSE OF ACTION #6 (DECLARATORY RELIEF -
PLAINTIFFS' ENTITLEMENT TO ADVANCEMENT/
INDEMNITY FOR PRIOR ARBITRATION)**

**ISSUE NO.8**: The Singers were entitled to indemnification [<u>from
GHCP</u>] for attorneys' fees and costs incurred in defending against the
prior Arbitration pursuant to § 11.1 of the Operating Agreements.

**ISSUE NO.9**: The Singers were entitled to indemnification [<u>from
GHCP</u>] for attorneys' fees and costs (in the amount of $603,629) incurred
in defending against the prior Arbitration, pursuant to § 11.1 of the
Operating Agreements because the Singers.

**CAUSE OF ACTION #7 (DECLARATORY RELIEF - NO
ADVANCEMENT/INDEMNITY OWING TO GHCP
DEFENDANTS FOR THIS ACTION)**

**ISSUE NO. 10**: <u>GHCP is not entitled</u> to indemnity or
advancement for this lawsuit pursuant to the terms of the Operating
Agreements and/or applicable law.

(Trustee RJN Ex. F (emphasis and bracketed language added).)

The Debtor filed its April 25, 2018 chapter 7 petition with an aggregate $41,123.44 in its
two bank accounts. Following her April 26, 2018 appointment as the chapter 7 trustee of the
Debtor's bankruptcy estate, the Trustee has been investigating the various positions asserted in
the State Court Actions and has participated in settlement discussions with the Plaintiffs and the
Moving Parties. The investigation remains incomplete and settlement discussions are ongoing.
(Kurtz Decl. ¶¶ 4-8.)

On July 6 and 9, 2018, the Motions were filed, seeking immediate stay relief to take the
following "Proposed Actions" in the LASC 1 action:

5

1
2
3
4
5

> The Proposed Actions are: (1) permitting Movants to defend themselves as cross-defendants in pending state court cross-complaints filed against them by debtor G.H. Properties. Inc.'s ("**Debtor**"), including permitting Movants to file and prosecute an anti-SLAPP motion which will seek attorneys' fees and costs against Debtor, (2) allowing the state court to interpret the Movants' operating agreements ("**Operating Agreements**") to determine how the assets of the LLCs, should be distributed to their members, and (3) permitting Movants to distribute the LLCs' assets consistent with the state court's interpretation of the Operating Agreements.

6

(LLC Mots. at 10 (Pasternak's Proposed Actions are virtually identical).)

7

8

By stipulation of the parties as approved by the Court, the hearings on the relief from stay motions were continued to August 14, 2018.

9

### III. ARGUMENT

10

11

12

13

14

15

16

17

The burden of proof on a motion for relief from the automatic stay initially rests on the moving party. *In re Plumberex Specialty Products, Inc.,* 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004) (citing *Sonnax Indus., Inc.* v. *Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285 (2d Cir. 1990)).  To obtain relief from the automatic stay, the movant must first establish a prima facie case that "cause" exists for relief under § 362(d)(1).  A prima facie case requires the movant to establish a "factual and legal right to the relief that it seeks." *Id.* n.11.  If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay must be denied. *Plumberex,* 311 B.R. at 557.

18

19

20

If a prima facie case is established, the burden shifts to the opposing party to show that relief from the stay is unwarranted. *Plumberex,* 311 B.R. at 557 (citing *Sonnax,* 907 F.2d at 1285; *In re Duvar Apt, Inc.,* 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996)).

21

22

23

24

25

26

27

28

What constitutes adequate "cause" to grant relief from the automatic stay is decided on a case-by-case basis. *In re Kronemyer,* 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (citing *Christensen* v. *Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir. 1990)).  In determining whether relief from the automatic stay should be granted to allow state court proceedings to continue, considerations such as judicial economy, the expertise of the state court, prejudice to the parties and whether exclusively bankruptcy issues are involved should be taken into account. *Kronemyer,* 405 B.R. at 921 (citing *MacDonald* v. *Macdonald (In re MacDonald),* 755 F.2d 715, 717 (9th Cir. 1985)); *Ozai* v. *Tabuena (In re Ozai),* 34 B.R. 764,

1  766 (B.A.P. 9th Cir. 1983)).

2       The twelve factors articulated in *In re Curtis,* 40 B.R. 795, 799-800 (Bankr. D. Utah

3  1984) are "appropriate, nonexclusive, factors to consider in deciding whether to grant relief

4  from the automatic stay to allow pending litigation to continue in another forum." *Kronemyer,*

5  405 B.R. at 921.  Not all *Curtis* factors are relevant in every case, and a court is not required to

6  give each of the *Curtis* factors equal weight in making its determination.  *Plumberex,* 311 B.R.

7  at 560 *(*citing *Sonnax,* 907 F.2d at 1286).  As the *Curtis* court noted, "the most important factor

8  in determining whether to grant relief from the automatic stay to permit litigation against the

9  debtor in another forum is the effect of such litigation on the administration of the estate ... even

10  slight interference with the administration may be enough to preclude relief in the absence of a

11  commensurate benefit." *Curtis,* 40 B.R. at 800.

12       Here, an analysis of the relevant *Curtis* factors shows that the Moving Parties have not

13  met their burden of proof by establishing a prima facie case for relief from stay to proceed to

14  judgment in the LASC 1 action and to allow distribution of the sale proceeds in accordance with

15  any judgment in that action.

16       Significantly, because the Trustee has not yet determined whether, and, if so, to what

17  extent, she will participate in the State Court Actions (LASC I and LASC 2), if relief from stay

18  were granted, the Trustee could not be in a position to oppose the MSA which is scheduled to be

19  heard on August 7, 2018.  Accordingly, if relief from stay were granted,  the estate's interests in

20  millions of dollars of LLC monies could be adjudicated adversely to the estate.

21       A.    <u>The lack of any connection with or interference with the bankruptcy case</u>

22       The Trustee's primary duty under 11 U.S.C. § 704(a) is to "collect and reduce to money

23  the property of the estate for which such trustee serves, and close such estate as expeditiously as

24  is compatible with the best interests of parties in interest."  Granting stay relief would interfere

25  with the Trustee's ability to properly administer the estate's interest in the LLCs and the

26  proceeds of sale of the LLCs' real property since the Trustee is not now in a position to fully

27  evaluate the issues involved in the pending summary adjudication motion (these issues are the

28  subject of voluminous briefing) and assert whatever position is in the best interest of the estate

7

1   in light of the limited time for doing so.  Stay relief would therefore prejudice the interests of

2   other creditors and interested parties in the Debtor's bankruptcy case.

3        Although the Trustee has begun settlement discussions with certain parties in interest,

4   the Trustee's investigation of the State Court Actions remains incomplete.  Stay relief would

5   therefore interfere with the Trustee's investigation and settlement discussions.  The Motions also

6   seek to require the Trustee to prematurely determine whether to proceed with the Cross-

7   complaint and risk creating additional administrative expenses based on Moving Parties'

8   argument that the Trustee will have "returned to the fray."

9        B.    Whether the foreign proceeding involves the debtor as a fiduciary

10        This factor is not applicable.

11        C.    Whether a specialized tribunal has been established to hear the particular cause
              of action and whether that tribunal has the expertise to hear such cases

12

13        Bankruptcy courts and state courts have equal expertise in resolving contractual disputes

    like those at issue in the LASC 1 action.  This factor does not weigh in favor of stay relief.

14

    However, in light of the pendency of the LASC 1 action for more than two years, and the

15

    issuance by the state court of certain preliminary relief, the likelihood is that the litigation will

16

    eventually continue in state court if the Trustee cannot effect a settlement.

17

18        D.    Whether the debtor's insurance carrier has assumed full financial responsibility
              for defending the litigation

19        This factor is not applicable.

20        E.    Whether the action essentially involves third parties, and the debtor functions
              only as a bailee or a conduit for the goods or proceeds in question

21

22        The Debtor has a direct pecuniary/financial interest in LASC 1 and is not a bystander.

    The Debtor has an investment interest and a management fee interest in the LLCs and their

23

    assets (i.e., the sale proceeds), and an indemnity claim against the LLCs.  The resolution of the

24

    State Court Actions and, in particular, the determination of the waterfall, will have a significant

25

    impact on this estate.

26

        The other parties to LASC 1 either agree or disagree with the Debtor's positions on the

27

    disputed  issues, and have made claims in the State Court Actions against the Debtor for alleged

28

1  waterfall underpayments and for indemnity payments already received by the Debtor.  One

2  party, Grayson, has caused his company, Kaytig, Inc., to file a $5,839,518.86 proof of claim for

3  consulting monthly fees and performance bonuses for its assistance to the Debtor in operating

4  the three LLCs in the LASC 1 action, the three LLCs in the LASC 2 action, and two other

5  LLCs.

6      F.    Whether the litigation in another forum would prejudice the interests of the other
             creditors, the creditors' committee and other interested parties

7      As noted above, the Trustee has had insufficient time and currently lacks the resources to

8  participate actively in the state court litigation; as a result of which, granting relief from stay at

9  this time, would effectively allow the state court to resolve issues of vital importance to this

10  estate, without the Trustee's involvement.  Accordingly, stay relief would be prejudicial to the

11  interests of creditors.

12      G.    Whether the relief will result in a partial or complete resolution of the issues

13      Relief from stay would permit the LASC 1 action to proceed to judgment on, among

14  other things, the waterfall and indemnity disputes, which would effectively resolve those issues

15  in the State Court Actions.

16      As to the Cross-complaint filed by the Debtor prior to its bankruptcy filing, the  Trustee

17  has not prosecuted the Cross-complaint and has not determined whether to prosecute the Cross-

18  complaint.  Further, the Trustee has offered the Moving Parties a stipulated stay of the Cross-

19  complaint for submission to the state court and to an extension of time to file their anti-SLAPP

20  motions.  Thus, Pasternak and the LLCs have no need to seek stay relief to defend the Cross-

21  complaint.

22      H.    Whether the judgment claim arising from the foreign action is subject to
             equitable subordination

23

24      The Trustee's investigation of the State Court Actions and surrounding events has not

25  concluded and thus the Trustee does not currently know whether equitable subordination would

26  be an issue.

27

28

9

I.      Whether movant's success in the foregoing proceeding would result in a judicial
        lien avoidable by the debtor under section 522(f)

This factor is not applicable because the Debtor is not an individual entitled to assert

exemptions.

J.      The interests of judicial economy and the expeditious and economical
        determination of litigation for the parties

At an appropriate point of time—after the Trustee has completed her investigation,

exhausted settlement efforts, and evaluated any additional proofs of claim—it might be in the

interests of judicial economy to permit the LASC 1 action to proceed.  That time has not arrived.

K.      Whether the foreign proceedings have progressed to the point where the parties
        are prepared for trial

The Moving Parties make a conclusory allegation without support that the state court

might schedule a trial soon.  The automatic stay will prevent the MSA hearing from going

forward (because the relief it seeks is almost entirely directed against the Debtor and all of the

relief would adversely affect the Debtor's interests in the LLCs and the sale proceeds).  No

evidence is presented on the state court's next available trial date.

L.      The impact of the stay and the "balance of the hurt

As noted above, stay relief would interfere with the Trustee's administration of the estate

and severely prejudice the rights of the trustee to administer the LLC funds.  In contrast, denial

of relief from stay will only temporarily affect the rights of the Moving Parties by delaying the

hearing on the MSA.

## IV. CONCLUSION

An analysis that the *Curtis* factors shows that the Moving Parties have failed to establish

a prima facie case for stay relief or that the Trustee has established that stay relief is not

warranted.  The Motions should be denied.

Dated: July 31, 2018                    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


                                        By: ___*/s/ Kurt Ramlo*_____
                                            TIMOTHY J. YOO
                                            GARY KLAUSNER
                                            KURT RAMLO
                                        Attorneys for Heide Kurtz, Chapter 7 Trustee

10

1                      **DECLARATION OF HEIDE KURTZ**

2        I, Heidi Kurtz, declare as follows:

3        1.      I am the duly appointed, qualified, and acting Chapter 7 Trustee (the "Trustee")

4   for the bankruptcy estate of G.H. Cooper Properties (the "Debtor").

5        2.      The facts stated herein are known to be true of my personal knowledge.  This

6   declaration is submitted in support of the within omnibus opposition to the four *Motions for*

7   *Relief from Automatic Stay Under 11 U.S.C. § 362 (Action in Non-Bankruptcy Forum)* filed by

8   David Pasternak and by Sherrel Investment Group, LLC, Straight Creek Investment Group,

9   LLC, and Village West Investment Group, LLC.

10       3.      On or about April 26, 2018, the Office of the United States Trustee appointed me

11  as the chapter 7 trustee for the Debtor's bankruptcy estate.

12       4.      The Debtor filed its April 25, 2018 chapter 7 petition with an aggregate

13  $41,123.44 in its two bank accounts.

14       5.      Following my appointment, I began my review of the state court actions in which

15  the Debtor and certain other members of six LLCs dispute how sale proceeds were and should

16  be distributed under the "waterfall" provisions of the governing operating agreements.  The

17  members also dispute whether the Debtor or other LLC members are entitled to indemnification

18  for the legal expenses incurred in arbitrating and litigating the waterfall disputes.

19       6.      When the Debtor filed its April 25, 2018 chapter 7 petition, it had an aggregate

20  $41,123.44 of cash in its two bankruptcy accounts.  These funds are insufficient to employ and

21  retain legal counsel to defend against the motion for summary adjudication currently pending

22  before the state court or to meaningfully participate in any trial.

23       7.      Since my appointment as the chapter 7 trustee of the Debtor's bankruptcy estate, I

24  have been investigating the various positions asserted in the two state court actions and have

25  participated in settlement discussions with the plaintiffs and the moving parties.  My

26  investigation remains incomplete and settlement discussions are ongoing.  I believe that it would

27  be a waste of estate assets and resources for me to defend the estate's interests in the first state

28  court action or to prematurely determine whether to proceed with the estate's affirmative claims

                                        11

1  in that action without first fully evaluating the state court action and seeking a settlement in

2  accordance with that evaluation.

3       8.      Granting stay relief would interfere with my ability to properly administer the

4  estate's interest in the LLCs and the proceeds of sale of the LLCs' real property since I am not

5  now in a position to fully evaluate the issues involved in the pending summary adjudication

6  motion (these issues are the subject of voluminous briefing) and assert whatever position is in

7  the best interest of the estate in light of the limited time for doing so.

8       I declare under penalty of perjury under the laws of the United States of America that the

9  foregoing is true and correct to the best of my knowledge, information and belief.

10      Executed on July 31, 2018, at _San Pedro_, California.

11

12      _____
        Heide Kurtz

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **OMNIBUS OPPOSITION TO MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY (ACTION IN NON BANKRUPTCY FORUM) (ECF NOS. 39, 45, 47, 49); DECLARATION OF HEIDE KURTZ IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**.  <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 31, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- David M Almaraz     dalmaraz@hkemlaw.com, scutrell@hkemlaw.com;gmartin@hkemlaw.com
- Simon Aron     saron@wrslawyers.com
- Howard Camhi     hcamhi@ecjlaw.com, lpekrul@ecjlaw.com
- Alan W Forsley     alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- Michael A Geibelson     mgeibelson@robinskaplan.com, lbryant-wilson@robinskaplan.com
- Heide Kurtz (TR)     trustee@hkurtzco.com, C169@ecfcbis.com
- Lucas A Messenger     LAMessenger@rkmc.com
- Carmela Pagay     ctp@lnbyb.com
- Kurt Ramlo     kr@lnbyb.com, kr@ecf.inforuptcy.com
- John N Tedford     jtedford@dgdk.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com;tedfordjr76099@notify.bestcase.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Timothy J Yoo     tjy@lnbyb.com
- Aaron E de Leest     aed@dgdk.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com;deleestar76099@notify.bestcase.com

**2.  <u>SERVED BY UNITED STATES MAIL</u>**: On **July 31, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Chambers 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 31, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is
2   true and correct.

3    **July 31, 2018**                    Lisa Masse                        */s/ Lisa Masse*
      *Date*                               *Type Name*                       *Signature*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**